The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL COHEN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>BLACKBAUD, INC., THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and BANK STREET COLLEGE OF EDUCATION,<br><br>                    Defendants. | Case No. 2:20-cv-01388-JCC<br><br>**DEFENDANT PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: JANUARY 22, 2021<br><br>ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

I.    Plaintiff Has Failed to Allege Personal Jurisdiction Over Harvard ..................................... 1

II.    Plaintiff Lacks Article III Standing ................................................................................... 4

III.   Plaintiff Cannot State A Plausible Claim Against Harvard. ............................................... 7

    A.    Choice Of Law .......................................................................................................... 7

    B.    Plaintiff's Negligence Claim Fails ........................................................................... 9

    C.    Plaintiff's Breach Of Contract Claim Fails ............................................................ 10

    D.    Plaintiff's Consumer Protection And Data Breach Law Claims Fail .................... 11

    E.    Plaintiff Cannot State A Plausible Claim For Misrepresentation .......................... 13

    F.    Plaintiff Cannot State A Plausible Claim For Invasion Of Privacy ....................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ables v. Brooks Bros. Grp., Inc.*,
    No. CV 17-4309, 2018 WL 8806667 (C.D. Cal. June 7, 2018) .................................................5

*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,
    No. 19-CV-01860, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ............................................6

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...................................................................................5

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017)..............................................................................................................1

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017).....................................................................................................1, 2, 3

*Buckley v. Santander Consumer USA, Inc.*,
    No. C17-5813 BHS, 2018 WL 1532671 (W.D. Wash. Mar. 29, 2018)..................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..................................................................................................................3

*In re Capital One Consumer Data Sec. Breach Litig.*,
    No. 1:19MD2915, 2020 WL 5629790 (E.D. Va. Sept. 18, 2020) ...........................................8

*Clapper v. Amnesty Int'l, USA*, 568 U.S. 398 (2013) .......................................................................5

*Dolmage v. Combined Ins. Co. of Am.*,
    No. 14 C 3809, 2017 WL 5178792 (N.D. Ill. Nov. 8, 2017)..................................................10

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    No.: 3:16-cv-00014, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ..........................................7

*Eaton v. Engelcke Mfg., Inc.*,
    681 P.2d 1312 (Wash. App. 1984)..........................................................................................10

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .....................................................................................4

*Fero v. Excellus Health Plan, Inc.*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017)...................................................................................10

*Foisie v. Worcester Polytechnic Inst.*,
    967 F.3d 27 (1st Cir. 2020)......................................................................................................8

*Fox v. Iowa Health Sys.*,
    399 F. Supp. 3d 780 (W.D. Wis. 2019) ..................................................................................10

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006) ..................................................................................................7

*Huynh v. Quora, Inc.*,
    No. 18-cv-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ..................................5

*Int'l Broth. Of Elec. Workers Local Union No. 5 v. U.S. Dept. of Hous. & Urban Dev.*,
    852 F.2d 87 (3d Cir. 1988)......................................................................................................13

*Joseph Saveri Law Firm, Inc. v. Criden*,
    696 F. App'x 189 (9th Cir. 2017) .............................................................................................2

*Khan v. Children's National Health System*,
    188 F. Supp. 3d 524 (D. Md. 2016) .........................................................................................4

*Krottner v. Starbucks Corp.*,
    406 F. App'x 129 (9th Cir. 2010) ...........................................................................................10

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ..............................................................................................5, 6

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ..................................................................................................3

*Lovell v. P.F. Chang's China Bistro, Inc.*,
    2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ..................................................................10

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,
    440 F. Supp. 3d 447 (D. Md. 2020) .......................................................................................10

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007) ............................................................................................. 2-3

*Oregon Mutual Insurance Co. v. Barkley*,
    No. 2:18-cv-01342, 2019 WL 3891621 (W.D. Wash. Aug. 19, 2019).....................................3

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..................................................................................................3

*Rahman v. Marriott Int'l*,
    No. 20-00654 (C.D. Cal. Jan. 12, 2021) ..................................................................................5

*Remijas v. Neiman Marcus Group, LLC*,
    794 F.3d 688 (7th Cir. 2015) ....................................................................................................7

iii

HARVARD'S REPLY ISO MOTION TO DISMISS
CASE NO. 2:20-CV-01388-JCC

HARVARD'S REPLY ISO MOTION TO DISMISS
CASE NO. 2:20-CV-01388-JCC

MURPHY PEARSON BRADLEY & FEENEY
1455 NW LEARY WAY, SUITE 400
SEATTLE, WA 98107 * (206) 489-5113

*Ruiz v. Gap, Inc.*,
    No. 09-15971, 380 F. App'x 689 (9th Cir. May 28, 2010)..........................................................5

*Schneider v. Cal. Dep't of Corrections*,
    151 F.3d 1194 (9th Cir. 1998) ..............................................................................................10

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).............................................................................................................5

*Stasi v. Inmediata Health Grp. Corp.*,
    No. 19CV2353, 2020 WL 2126317 (S.D. Cal. May 5, 2020) ..................................................5

*Veridian Credit Union v. Eddie Bauer, LLC*,
    295 F. Supp. 3d 1140 (W.D. Wash. 2017)..........................................................................8, 12

*Walden v. Fiore*,
    571 U.S. 277 (2014)..................................................................................................................1

*In re Zappos.com*,
    108 F. Supp. 3d 949 (D. Nev. 2015)........................................................................................4

**Court Rules**

Rule 12(b)(2)..................................................................................................................................3

**Other Authorities**

*Mission Statement*, Harvard Club of Seattle,
    http://hcseattle.clubs.harvard.edu/about.html .........................................................................2

Plaintiff's opposition confirms that this Court lacks personal jurisdiction over Harvard. He ignores the governing legal standard and cites no facts showing that his claims arise from activities Harvard purposefully directed toward Washington. The only connection between this lawsuit and Washington is that Plaintiff happens to reside here; that fortuity cannot establish specific jurisdiction over Harvard in Washington. Plaintiff's opposition also confirms he lacks standing to sue *Harvard*, as opposed to Blackbaud. His claims against Harvard allege disclosure of non-sensitive information that caused him no harm. That Blackbaud may have other customers whose sensitive information was exposed does not establish standing against Harvard. Finally, Plaintiff's claims suffer from myriad pleading failures, which his opposition does not solve. Because Plaintiff has already had a chance to amend, the Amended Complaint should be dismissed with prejudice.

### I. Plaintiff Has Failed to Allege Personal Jurisdiction Over Harvard

Plaintiff does not dispute he must plead general or specific jurisdiction over Harvard. While he asserts that "Harvard targeted Washington generally," Pl.'s Opp'n 3, ECF No. 57, he cannot demonstrate general jurisdiction over Harvard in Washington. Despite Plaintiff's characterization of Harvard as having "satellite operations in every state," *id.* at 4, he concedes that Harvard "is a Massachusetts not-for-profit corporation with its principal place of business in Massachusetts," Am. Compl. ¶ 17. Under the governing standard, therefore, Washington lacks general jurisdiction over Harvard. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017); Mot. 5, ECF No. 56.

Nor can Plaintiff manufacture specific jurisdiction in this case. Plaintiff does not dispute that *his* presence in Washington, on its own, cannot establish personal jurisdiction over Harvard. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Nor can Plaintiff rely on allegations that "Harvard targeted Washington generally." Pl.'s Opp'n 3. Specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). General contacts with a forum having nothing to do with a plaintiff's claims are not relevant and cannot establish jurisdiction. *Id.* Yet the only *relevant* interaction Plaintiff alleges between Harvard and Washington was that Harvard sent him "an email notifying him of the Data Breach," Am. Compl. ¶ 40—and sending emails "simply do[es] not qualify as

1

purposeful activity" in Washington, *Joseph Saveri Law Firm, Inc. v. Criden*, 696 F. App'x 189, 192 (9th Cir. 2017).

Accordingly, in his opposition, Plaintiff cites a series of events put on by the Harvard Club of Seattle and an alumni event held to welcome the class of 2020. Neither supports jurisdiction here, for at least three reasons. First, Plaintiff does not allege that his data was collected by Harvard at an event in Washington. Rather, he asserts that Harvard "stor[ed] his personal information[] for *seventeen years* after he graduated (*despite no activity on Plaintiff's part*)." Pl.'s Opp'n 5 (emphases added). Plaintiff thus confirms that any relevant conduct by Harvard took place while Plaintiff was a student in Massachusetts—not in the State of Washington. Second, while Plaintiff references alumni events in Washington, he does not allege that he attended them; there is thus no "connection between" those events "and the specific claims at issue." *Bristol-Myers*, 137 S. Ct. at 1781. Indeed, the events Plaintiff references took place *after* the events in Plaintiff's complaint and so could not possibly establish jurisdiction. Third, the Harvard Club of Seattle is not Harvard. It is a separate organization incorporated in Washington. *Compare Mission Statement*, Harvard Club of Seattle, http://hcseattle.clubs.harvard.edu/about.html (last visited Jan. 20, 2021) (click "Articles of Incorporation"), *with* Am. Compl. ¶ 17 (noting Harvard's incorporation in Massachusetts). Plaintiff cannot establish specific jurisdiction over Harvard by citing events hosted by a separate entity in Washington, which he did not even attend.

Plaintiff also claims more generally that Harvard engages in marketing to "maintain its brand worldwide," Pl.'s Opp'n 4, and made "efforts to maintain relationships with Plaintiff and the putative Class," *id.* at 6, but he alleges no facts suggesting Harvard obtained or stored Plaintiff's data through activities Harvard conducted in Washington. Given his concession that his data was collected seventeen years ago while he was a student in Massachusetts, he has not "show[n] that he would not have suffered an injury 'but for' [Harvard's] forum-related conduct." *Menken v.*

2

*Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).[1] Harvard has a connection to Plaintiff because he attended Harvard in Massachusetts; the fact that Plaintiff now lives in Washington does not establish specific jurisdiction over Harvard in this case.

Plaintiff also asserts that Harvard "sought to profit from its relationship with Plaintiff," Pl.'s Opp'n 5, and, for reasons not provided, claims Harvard should have "expect[ed] an injury to be felt in Washington State," *id.* at 6. But Plaintiff cites no facts to support that bald assertion or tie it to his claims. Nor does Plaintiff allege that Harvard derived a benefit from activities it partook *in Washington*, which Plaintiff's own case law concedes is necessary. *Id.* at 5 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). Put differently, Plaintiff claims Harvard generally attempted to maintain a relationship with Plaintiff in Washington, but he does not assert that Harvard either obtained or stored Plaintiff's personal information in Washington, nor that Harvard engaged in any other act in Washington relevant to its storage of Plaintiff's data. Other activities not relevant to his claims simply do not suffice. *See Bristol-Myers*, 137 S. Ct. at 1781.

Finally, Plaintiff has demonstrated no right or need for jurisdictional discovery. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery...." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006). And jurisdictional discovery is inappropriate "when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Here, Plaintiff does not even allege attenuated or bare contacts by Harvard in Washington having a connection to Plaintiff's claims, even after Harvard filed its motion to dismiss the initial Complaint on jurisdictional grounds. Accordingly, the Court should dismiss Harvard as a defendant under Rule 12(b)(2).

---

[1] Plaintiff cites *Oregon Mutual Insurance Co. v. Barkley*, No. 2:18-cv-01342, 2019 WL 3891621 (W.D. Wash. Aug. 19, 2019), to suggest he meets the but-for test. Pl.'s Opp'n 6. But that case involved an insurance policy negotiated and signed in Washington when the defendants were Washington residents. 2019 WL 3891621 at *3. Plaintiff alleges no analogous contract made by Harvard in Washington, and Harvard has never been headquartered in Washington.

## II. Plaintiff Lacks Article III Standing

Plaintiff's opposition does not cure the fundamental standing defect in his Amended Complaint against Harvard. Plaintiff does not allege that any of *his* sensitive information was obtained from *Harvard*, or that it actually has been used for fraudulent purposes. Mot. 8-9; Am. Compl. ¶¶ 30, 34. Nor does Plaintiff allege that he has actually suffered from identity theft, rather than from mere fear of it. Nothing in Plaintiff's opposition refutes these realities.

**Injury.** Plaintiff asserts two theories by which he was injured: invasion of privacy rights and mitigation of damages. Pl.'s Opp'n 9-13.[2] Neither establishes Article III standing.

First, Plaintiff argues that whenever private information is disclosed to hackers, there is Article III standing in the loss of the "right to privacy." If those magic words could conjure standing here, they would do so in every case involving improper access to data. Yet Plaintiff does not actually *cite* any case embracing a "right of privacy" theory on similar facts. Plaintiff cites a single district court decision finding a privacy interest in not having one's entire social media feed intentionally collected and monetized for profit. *See id.* at 9 (citing *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 785-86 (N.D. Cal. 2019)). Those facts are materially different from data breach cases, where standing has regularly been found lacking in response to a plaintiff's assertion of privacy interests. *See*, *e.g.*, *In re Zappos.com*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (loss of privacy inadequate to establish standing unless "that loss amounts to a concrete and particularized injury"); *Khan v. Children's National Health System*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (alleged "loss of privacy" does not "constitute[] an injury in fact" absent concrete "damages"). This Court should not become the first to adopt a "loss of privacy" theory yielding standing every time personal information is improperly accessed.

As for Plaintiff's mitigation of damages theory, Plaintiff does not dispute that plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future

---

[2] Plaintiff's opposition brief says nothing about Harvard's argument that his "loss of value" theory cannot establish standing. Mot. 11-12. He therefore appears to abandon this theory of injury from the Amended Complaint.

4

harm that is not certainly impending," *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 402 (2013), and that claims based on "mitigation costs … rise and fall together" with the risk of future harm, *Stasi v. Inmediata Health Grp. Corp.*, No. 19CV2353, 2020 WL 2126317, at *9 (S.D. Cal. May 5, 2020). In all of Plaintiff's cases, the courts found standing based on actual or threatened misuse. *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010); *Ruiz v. Gap, Inc.*, No. 09-15971, 380 F. App'x 689, 691-92 (9th Cir. May 28, 2010); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1035 (N.D. Cal. 2019); *Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2019 WL 11502875, at*4-5 (N.D. Cal. Dec. 19, 2019). Here, however, Plaintiff has not suffered any actual harm. Plaintiff asserts only the possibility of *future* misuse of his data. *See* Pl.'s Opp'n 9 (asserting only that "it is easy to foresee the inevitability of the information to be used for illicit purposes"). His failure to allege actual or imminently threatened harm is fatal to his standing. *See, e.g.*, *Ables v. Brooks Bros. Grp., Inc.*, No. CV 17-4309, 2018 WL 8806667, at *5 (C.D. Cal. June 7, 2018).

Moreover, here the alleged risk of future harm does not meet the constitutional minimum because Plaintiff's allegedly stolen data was prosaic, not sensitive. Plaintiff admits the only data in Harvard's possession was alumni birthdates, addresses, employment information, and charitable giving details. Pl.'s Opp'n 9, 10. The Ninth Circuit does not consider such information sensitive enough to confer standing, in part because it is widely available. *See* Mot. 10-11; *see also Rahman v. Marriott Int'l*, No. 20-00654, at *3 (C.D. Cal. Jan. 12, 2021) (slip op.) ("Plaintiff has not plausibly pled here that any of their more sensitive data—such as credit card information, passports, or social security numbers—has fallen into the wrong hands. Without a breach of this type of sensitive information, Plaintiff has not suffered an injury in fact and cannot meet the constitutional requirements of standing.").

Nor can Plaintiff manufacture constitutional standing by citing the Washington Data Breach Act's ("DBA") treatment of birthdates as protected information. Pl.'s Opp'n 11. Even assuming Plaintiff had a DBA claim based on the alleged theft of his birthdate, *but see infra* Part III.D, "Article III standing requires a concrete injury even in the context of a statutory violation," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Unlike credit cards or social security

numbers, birthdates are not highly sensitive for Article III standing purposes, and in any event, Plaintiff has not alleged an imminent risk of injury.

Next, Plaintiff speculates that highly sensitive information "could be included among the[] descriptions" of data provided in Harvard's data breach notice, in light of Blackbaud's September 2020 announcement stating that sensitive information may have been stolen. Pl.'s Opp'n 11. But Blackbaud's announcement does *not* say such sensitive information was stolen *from Harvard*, as opposed to other Blackbaud customers. Mot. 4, 8. Plaintiff provides nothing other than rank speculation that Harvard might have stored such information about him; indeed, he does not cite any allegation in his Amended Complaint that he provided any of the highly sensitive information mentioned in his opposition brief. *Compare* Am. Compl. ¶ 41 (alleging only run-of-the-mill information like "names," "addresses," and "birthdates"), *with* Pl.'s Opp'n 11 (speculating that information like compensation, income tax, or health insurance "could be included"). Plaintiff is in a position to know what information he provided the Harvard Office of Alumni Engagement. Am. Compl. ¶ 62. Yet nowhere in his Amended Complaint does he allege that he provided highly sensitive information to Harvard, that Harvard was reasonably likely to have obtained such information, or that such information was in fact among the Harvard data stored with Blackbaud. Article III injury is not "certainly impending" when based on an "attenuated chain of possibilities." *Clapper*, 568 U.S. at 410. The Amended Complaint should thus be dismissed.

**Traceability.** Plaintiff also has barely attempted to explain how his alleged injuries could be "fairly traceable to the challenged action." *Krottner*, 628 F.3d at 1141. He again speculates that Harvard might have maintained his sensitive information, based on Blackbaud's September 2020 statement—which, again, said nothing about Harvard's having such information. Pl.'s Opp'n 12-13. Even still, Plaintiff does not explain, in either his Amended Complaint or his opposition brief, how the hypothetical, unidentified "reasonable" procedures Plaintiff claims Harvard failed to adopt would have prevented exposure of his personal information. *See Anderson v. Kimpton Hotel & Rest. Grp., LLC,* No. 19-CV-01860, 2019 WL 3753308, at *3-4 (N.D. Cal. Aug. 8, 2019) (failure to identify "adequate action" not taken defeats standing). Nor does Plaintiff explain, much less

allege in the Amended Complaint, how Harvard's "data retention practices … contributed to the occurrence and severity of the Data Breach," Am. Compl. ¶ 10, or how Harvard's alleged delay in informing him of the breach of his non-sensitive data caused him harm when he experienced no instances of fraud during the alleged delay. And Plaintiff has failed to allege that any injury is traceable to *Harvard*'s actions, rather than Bank Street's or the Tenement Museum's or Blackbaud's. *See* Mot. 12-13.[3] For these reasons, Plaintiff lacks standing.

**Injunctive Relief.**  Plaintiff also provides no substantive response to Harvard's argument that he lacks standing to seek an injunction. He merely claims the threatened injury is "ongoing," "since Harvard and Blackbaud have yet to complete their investigation." Pl.'s Opp'n 13. But his amended complaint says that only *Blackbaud* has an ongoing investigation, not Harvard. Am. Compl. ¶¶ 30, 32. Regardless, to obtain injunctive relief, plaintiffs "must demonstrate that they are 'realistically threatened by a *repetition* of the violation.'" *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (emphasis added). "[A]n order requiring [Harvard] to enhance [its] cybersecurity in the future … will not provide any relief for past injuries or injuries incurred in the future because of a data breach that has already occurred." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No.: 3:16-cv-00014, 2016 WL 6523428, at *8 (S.D. Cal. Nov. 3, 2016) (quotation marks omitted).

### III. Plaintiff Cannot State A Plausible Claim Against Harvard.

Plaintiff's defense of his individual claims suffers from the same fundamental flaw: he impermissibly attempts to impute Blackbaud's alleged conduct to Harvard, and he substitutes conclusory assertions for facts.

#### A. Choice of Law.

---

[3] *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), cited by Plaintiff, *see* Pl.'s Opp'n 23, does not establish traceability. In *Remijas*, the court rejected the argument that the plaintiff's data might have been exposed in other, *unrelated* data breaches. 794 F.3d at 696. Here, Plaintiff's information was allegedly exposed to a *single* hacker in one hack. No speculation is required as to whether his data might have been exposed had Harvard not been involved; Plaintiff himself alleges that Blackbaud possessed his data from several different clients. *See* Mot. 12-13.

Plaintiff fights the application of Massachusetts law where it is fatal to his claims. But there is no real dispute that Massachusetts has the most significant relationship to Plaintiff's claims against Harvard. Plaintiff admits he provided his information to Harvard *in Massachusetts*. Pl.'s Opp'n 5. Nor does Plaintiff allege as fact in the Amended Complaint what he raises as hypotheticals in his opposition: that Harvard might have had "persons involved in data security decision-making, implementation, and training" located in Washington, *id.* at 15, or that the relationship between Harvard and Blackbaud may have been centered in Washington, *id.* at 16. Both possibilities are wildly speculative given that Harvard's operations are centered in Massachusetts and Blackbaud's in South Carolina.

Indeed, Plaintiff essentially concedes that Harvard's relationship to Washington in this case boils down to a single email Harvard sent to Plaintiff alerting him of the Blackbaud breach while he happened to reside in Washington, and sent at the same time Harvard alerted others around the country of the same incident. *See supra* at 2-3. That is the prototypical "fortuitous" relationship in which Washington's choice-of-law rules would discount Plaintiff's residence in the choice-of-law analysis. *See Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1153 (W.D. Wash. 2017). The *Veridian* case is directly on point. It is a data breach case where the court easily resolved choice-of-law issues at the 12(b)(6) stage. The Court should apply the same analysis here.

Even if resolving choice of law now were premature, as Plaintiff contends, Plaintiff would be incorrect that Washington law would then apply by default. Pl.'s Opp'n 16. Plaintiff's own cases demonstrate that if a court needs more information before making a choice-of-law determination, then the court must apply *both* states' laws. *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 44 (1st Cir. 2020) (instructing district court to evaluate the "claims under each state's law"); *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915 (AJT/JFA), 2020 WL 5629790, at *5 (E.D. Va. Sept. 18, 2020) (considering "each of the asserted claims under California, Florida, New York, Texas, Virginia, and Washington law"). Harvard's motion established that Plaintiff's claims fail under Massachusetts law; by not addressing this point, Plaintiff concedes it.

Finally, Harvard has *not* conceded that Plaintiff's claims are adequately pled under Washington law, nor has it premised its motion to dismiss solely on Massachusetts law. Pl.'s Opp'n 14. To the contrary, Harvard argued that Plaintiff's claims *also* fail under Washington law. *See* Mot. 17 n.8, 22 n.12, 26, 27 nn.14-15. That remains true.

### B.       Plaintiff's Negligence Claim Fails.

Plaintiff attempts to salvage his negligence claim by improperly imputing Blackbaud's actions—including its "payment of a ransom," Pl.'s Opp'n 16-17—to Harvard. But Plaintiff has no theory by which Blackbaud's alleged negligence in permitting, failing to detect, or responding to a data breach could be legally imputed to Harvard.

Plaintiff also repeats his conclusory allegations that Harvard failed to conduct due diligence, monitoring or oversight over Blackbaud. How so? One cannot say from reviewing the Amended Complaint, because it says nothing about how Harvard's practices depart from reasonable standards, how different practices would have prevented a hack, or even what exactly *Harvard in particular* — as opposed to Blackbaud — is alleged to have failed to do.

Nor does Plaintiff's threadbare allegation that Harvard held his data for "decades without any legitimate purpose for its retention" establish negligence. Pl.'s Opp'n 17. As explained in Harvard's Motion, that is an entirely reasonable and expected practice for a university alumni affairs department; it is not a legally plausible claim that a university alumni affairs department commits negligence by retaining data about its alumni. Mot. 12 n.5.

Plaintiff also repeats his allegation that Harvard failed to notify him of the data breach soon enough; but Plaintiff alleges that *Harvard* learned of the breach far later than Blackbaud did, not long before informing Plaintiff. Mot. 3, 26. Plaintiff's allegations about when the breach occurred, or when Blackbaud learned of the breach, cannot establish a negligence claim against Harvard.

Finally, Plaintiff's attempt to evade the economic loss doctrine is based entirely on his assertion that the breach included highly sensitive information like credit card data or social security numbers. Pl.'s Opp'n 19. This argument fails, however, because Plaintiff has not alleged that such highly sensitive information was obtained *from Harvard*, or even that Harvard possessed

any of Plaintiff's highly sensitive information. Mot. 18-19; *supra* at 6.  Thus, the economic loss doctrine bars Plaintiff's negligence claim.

### C. Plaintiff's Breach of Contract Claim Fails.

Plaintiff cannot fight the fact that "a corporate privacy policy is not enforceable … unattached to some underlying contract." *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 5178792, at *5 n.3 (N.D. Ill. Nov. 8, 2017) (citing cases); Mot. 19. The cases Plaintiff cites reinforce this proposition; each involves underlying contracts incorporating defendants' privacy policies. *See Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 801 (W.D. Wis. 2019) (finding viable breach of contract claim where a health services contract incorporated defendant's privacy policy); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 760 (W.D.N.Y. 2017) (finding viable breach of contract claim where the parties' underlying contracts "'incorporated … the relevant Defendants' privacy policies pertaining to personal information"). Plaintiff's untenable theory that Harvard's privacy policy is an independently enforceable agreement—absent an underlying contract between Plaintiff and Harvard—finds no foothold in the law.

Plaintiff cannot save his contract claim by raising a newly-asserted implied contract theory that appears nowhere in his Amended Complaint. *See, e.g.*, *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998). Nor do the cases on which Plaintiff relies support the viability of such a claim here. In *In re Marriott International, Inc., Customer Data Security Breach Litigation*, the court applied *Oregon* law to find an implied-in-fact contract, but expressly noted that "courts have dismissed implied contract claims based on Washington law." 440 F. Supp. 3d 447, 486 (D. Md. 2020) (citing *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010); *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371, at *3 (W.D. Wash. Mar. 27, 2015)). And in *Eaton v. Engelcke Mfg., Inc.*, the court found an implied contract for plaintiff's services when the defendant "repeatedly assured [plaintiff] he would be paid for the work." 681 P.2d 1312, 1315 (Wash. App. 1984). Here, though Plaintiff argues vaguely that "[t]he parties had an understanding that Plaintiff would provide the Private Information" only if "Harvard would adequately secure it" (Pl.'s Opp'n 21), there are no factual allegations in the Amended Complaint

supporting that conclusory statement nor any other implied contract. Indeed, Plaintiff pleads virtually no facts about the circumstances under which he provided his information to Harvard, and provides no basis on which to find a viable implied contract claim.

### D. Plaintiff's Consumer Protection and Data Breach Law Claims Fail.

Plaintiff's opposition improperly conflates his consumer protection law claims with his data breach notification law claims, and in the process fails to address many of Harvard's arguments. With respect to his data breach law claim, Plaintiff argues primarily that Massachusetts's data breach statute is inapplicable because it applies only to residents of Massachusetts. Pl.'s Opp'n 21-22. Harvard agrees that Plaintiff cannot state a claim under the Massachusetts statute, but that fact does not entitle Plaintiff to proceed under Washington law. Mot. 33-34. Nonetheless, Plaintiff's claim fails under Washington law, as well, for the reasons stated in Harvard's Motion. *See* Mot. 26.

Plaintiff's consumer protection law claim fares no better. Initially, Plaintiff fails entirely to address Harvard's arguments that he cannot state a claim under Massachusetts Chapter 93A. Mot. 21-25. And Plaintiff's claim similarly fails under Washington's Consumer Protection Act ("CPA"). Though Plaintiff argues that courts have permitted CPA claims "stemming from data breaches caused by inadequate data security" (Pl.'s Opp'n 22), the cases Plaintiff cites merely highlight what the Amended Complaint here lacks: allegations regarding the disclosure of sensitive personal information that resulted in harm to the plaintiff, and detailed factual allegations about the defendant's allegedly "inadequate" security practices.

In *Buckley v. Santander Consumer USA, Inc.*, for example, the court allowed the plaintiff to proceed with some of her CPA claims where she alleged that she lost $5,000 from a fraudulent debt collection scheme "premised on the misuse of her personal information regarding her debt with Santander." No. C17-5813 BHS, 2018 WL 1532671, at *3 (W.D. Wash. Mar. 29, 2018). Critical to the court's decision was that the defendant "received sensitive personal information that could result in significant financial harm to Buckley if mishandled." *Id.* at *4. Moreover, the court

expressly did not allow the plaintiff to proceed with "conclusory claims of 'deceptive' acts or practices without factual allegations of misrepresentations or omissions." *Id.* at *4.

And in *Veridian Credit Union*, the court allowed a CPA claim to proceed where "hackers stole credit and debit card data from Eddie Bauer's systems and sold it to other individuals who made fraudulent transactions on those payment cards." 295 F. Supp. 3d at 1148. There, the plaintiff pled extensive factual allegations about the defendant's inadequate security measures, including that the defendant "failed to implement appropriate software updates," and "refus[ed] to implement industry-standard security measures due to the cost of such measures." *Id.* at 1148, 1162. The Amended Complaint contains no such detail about Harvard's alleged failures here. This is fatal to Plaintiff's claim under either Massachusetts or Washington law. *See* Mot. 15-18, 24-25.

Plaintiff attempts to sidestep his inadequate pleading about Harvard's alleged security failures by pointing to Harvard's alleged delay in notifying Plaintiff of the data breach, and its alleged failure to notify Plaintiff of Blackbaud's "September 29, 2020 disclosure of additional details regarding the Data Breach." Pl.'s Opp'n 24. Neither allegation saves Plaintiff's statutory claims from dismissal. Plaintiff has *not* alleged that Harvard unreasonably delayed informing Plaintiff of the breach from the point in time *Harvard* became aware of the breach. Rather, Plaintiff alleges only a delay between *Blackbaud's* knowledge of the data breach and Harvard's notification. *See* Mot. 26. This is insufficient to state a claim against Harvard. Plaintiff also fails to articulate any injury arising from an alleged delay in Harvard's disclosure of the breach; he alleges injury from the breach itself and does not, for example, alleged that he suffered identity theft at all, much less due to a delayed notification. Further, Plaintiff has alleged no basis to find that Harvard had a duty to notify Plaintiff of Blackbaud's September 29 disclosure of "additional details," nor does Plaintiff allege that those "additional details" applied to any data obtained from Harvard as opposed to other Blackbaud customers. Indeed, Plaintiff does not even allege that Harvard *possessed* the type of highly sensitive information referenced in Blackbaud's September 29 disclosure, so lack of disclosure cannot establish a viable claim. *See* Mot. 24-25, 27-28.

Plaintiff also fails to plausibly allege that Harvard acted in trade or commerce. That

Washington's legislature has identified violation of Washington's law regulating "charitable solicitations" as "a per se violation of the [CPA]" (Pl.'s Opp'n 23) does not establish otherwise. Plaintiff does not allege that Harvard violated this statute, nor that Harvard's conduct occurred in the context of a charitable solicitation. Plaintiff has not pled facts demonstrating that Harvard's actions with respect to Plaintiff's personal data were "commercial." *See* Mot. 23-24.

### E.     Plaintiff Cannot State a Plausible Claim for Misrepresentation.

Instead of addressing Harvard's arguments for dismissal, Plaintiff merely recites the elements of misrepresentation claims under Washington law, and asserts baldly that his "well-pled factual allegations" prevent their dismissal. Pl.'s Opp'n 25-26. But the only relevant "factual allegations" in the Amended Complaint relate to the actions of *Blackbaud*, not Harvard. None of Plaintiff's allegations plausibly suggest that Harvard had any knowledge of the alleged falsity of any of its statements, or even that Harvard's statements were in fact false. *See* Mot. 27-28. Plaintiff does nothing to address these pleading failures, which are fatal to his misrepresentation claims.

### F.     Plaintiff Cannot State a Plausible Claim for Invasion of Privacy.

As Plaintiff acknowledges, his invasion of privacy claim rises or falls on the same bases as his other claims against Harvard. *See* Pl.'s Opp'n 26-27. And while Plaintiff cites several cases identifying actionable privacy interests, none involve the type of non-sensitive, widely available information that Plaintiff alleges Harvard disclosed in the Blackbaud data breach. *See, e.g.*, *Int'l Broth. Of Elec. Workers Local Union No. 5 v. U.S. Dept. of Hous. & Urban Dev.*, 852 F.2d 87, 89 (3d Cir. 1988) (finding privacy interest in social security numbers). Because Plaintiff has failed to plausibly allege that Harvard maintained or disclosed Plaintiff's sensitive personal information, Plaintiff's invasion of privacy claim against Harvard must be dismissed.

For the foregoing reasons, this Court should grant Harvard's motion to dismiss the Amended Complaint with prejudice.

DATED: January 22, 2021                    **MURPHY PEARSON BRADLEY & FEENEY**

                                           By:  s/ Nicholas C. Larson
                                           Nicholas C. Larson

|   |   |
|---|---|
|   | Attorney for Defendant<br>President and Fellows of Harvard College<br>E-mail: nlarson@mpbf.com |
| **JENNER & BLOCK LLP**<br>Lindsay C. Harrison (to apply *pro hac vice*)<br>lharrison@jenner.com<br>Noah B. Bokat-Lindell (to apply *pro hac vice*)<br>nbokat-lindell@jenner.com<br>1099 New York Ave. NW, Suite 900<br>Washington, DC 20001-4412<br>Telephone: (202) 639-6000<br>Facsimile: (202) 639-6006<br><br>**JENNER & BLOCK LLP**<br>Kate T. Spelman (to apply *pro hac vice*)<br>kspelman@jenner.com<br>633 West 5th Street, Suite 3600<br>Los Angeles, CA 90071-2054<br>Tel.: (213) 239-5100 / Fax: (213) 239-5199 | **MURPHY PEARSON BRADLEY & FEENEY**<br>Nicholas C. Larson (WA Bar No. 46034)<br>nlarson@mpbf.com<br>1455 NW Leary Way<br>Suite 400<br>Seattle, WA 98107<br>Telephone: (206) 489-5113<br>Facsimile: (206) 489-5101<br><br>*Attorneys for Defendant*<br>*President and Fellows of Harvard College* |